[Cite as *Sood v. Rivers*, 2024-Ohio-3064.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| VINOY C. SOOD, et al., | CASE NO. 2023-T-0106 |
| Plaintiffs-Appellees, | |
| - vs - | Civil Appeal from the Warren Municipal Court |
| DONOVAN RIVERS, et al., | |
| Defendants-Appellants. | Trial Court No. 2022 CVG 001007 |

**O P I N I O N**

Decided: August 12, 2024
Judgment: Affirmed

*Thomas G. Carey*, Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481 (For Plaintiffs-Appellees).

*William M. Flevares*, Flevares Law Firm, LLC, 1064 Niles-Cortland Road, N.E., Warren, OH 44484 (For Defendants-Appellants).

MARY JANE TRAPP, J.

{¶1}   Defendants-appellants, Donovan Rivers and Roberta Hileman (collectively "the vendees"), appeal the judgment of the Warren Municipal Court finding that their land installment contract with plaintiffs-appellees, Vinoy C. Sood ("Mr. Sood") and Krishna Sood ("Mrs. Sood") (collectively, "the Soods"), was forfeited and cancelled.  At issue is whether the trial court correctly determined that the vendees paid less than 20% of the purchase price under the land contract.

{¶2}   The vendees raise three assignments of error, contending (1) the trial court erred as a matter of law by determining they paid less than 20% of principal under the

land contract; thus, the court erred by finding that the Soods were entitled to forfeiture and a writ of restitution; (2) the trial court erred in deciding the case based on equitable principles; and (3) alternatively, equitable principles favor them rather than the Soods.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The trial court properly determined that the vendees paid less than 20% of principal. Pursuant to the language in the land contract, the vendees' January 3, 2022 payment constituted the final monthly payment, and monthly payments were required to be allocated first to the real estate taxes and the homeowner's assessment and then to interest and principal.

{¶5} (2) Since the land contract governed the allocation of the vendees' January 3, 2022 payment, the trial court erred in deciding the matter based on equitable principles. However, since the land contract required the Soods to allocate the vendees' January 3, 2022 payment in the manner that they did, the trial court's judgment was ultimately correct.

{¶6} (3) Since equitable principles were not applicable, the vendees' equitable argument is moot.

{¶7} Thus, the vendees' assignments of error are without merit, and we affirm the judgment of the Warren Municipal Court.

### Substantive and Procedural History

{¶8} This is the second appeal involving the parties' land installment contract.

{¶9} Mr. Sood owns the property located at 285 North Road, N.E., in Warren, Ohio.[1] In May 2019, the parties entered into a land installment contract pursuant to which

---

1. The record indicates Mrs. Sood transferred her interest to Mr. Sood in 2018.

Case No. 2023-T-0106

the vendees agreed to purchase the property for $206,500, payable as follows: (1) $28,000 at signing; (2) $178,500 plus interest at 7% per annum payable in consecutive monthly installments of $1,383.91 on the first day of each month beginning on June 1, 2019; and (3) the entire remaining balance due and payable on January 3, 2022. The vendees further agreed to make monthly payments of 1/12 of the annual real estate taxes and the homeowner's assessment, to be adjusted by subsequent increases or decreases.

{¶10} The land contract provided that the vendees' monthly payments would be allocated first to the real estate taxes and the homeowner's assessment and then to interest and principal. In the event the vendees' monthly payment was not received by the fifth day of that month, they would be charged a late fee of 10% of the monthly payment that would be added to the principal.

{¶11} The vendees were permitted to make "[a]dditional partial payments" or the "entire payment of the principal" at "any time, without prepayment penalty"; however, "any prepayment prior to the final payment" was required to be "in excess" of $40,000. The Soods agreed to transfer the property via general warranty deed upon completion of the land contract.

{¶12} The vendees paid the down payment at signing and made monthly payments through 2021. The vendees eventually began making their monthly payments in two separate portions using Zelle, which is an electronic money transfer service. Real estate taxes increased beginning in April 2021. The Soods charged a 10% late fee on payments or partial payments received after the fifth day of certain months.

{¶13} On January 3, 2022, the vendees made a payment of $1,997, although the entire remaining balance was due on that date. The Soods allocated the payment in the

3

same order as all prior payments, i.e., to real estate taxes, the homeowner's assessment, interest, and then principal. According to the Soods' calculation, the vendees had paid less than 20% of principal at that time. The vendees attempted to make another payment in February 2022, which the Soods rejected.

{¶14} In February 2022, the Soods served the vendees with a notice of default and forfeiture and notice to leave the premises. The notice stated that the vendees had been in default for more than 30 days for failing to pay the full balance of the land contract on January 3, 2022.

{¶15} The Soods filed a complaint in the Warren Municipal Court for breach of the land contract and requested forfeiture and restitution of the premises. The vendees appeared through counsel. After holding two hearings, the magistrate filed a decision concluding that the vendees had paid less than 20% of principal and that forfeiture was proper. On the same day, the trial court filed a judgment entry adopting the magistrate's decision and ordered the issuance of a writ of restitution.

{¶16} The matter was stayed for several months due to the vendees' bankruptcy filing. After their bankruptcy was involuntarily dismissed, the vendees, through new counsel, filed objections and supplemental objections to the magistrate's decision, which the Soods opposed. The trial court filed a judgment entry denying the vendees' objections without discussion and ordered the eviction to proceed.

{¶17} The vendees appealed. This court reversed the trial court's judgment in *Sood v. Rivers*, 2023-Ohio-3417, ¶ 46 (11th Dist.). We could not find that the manifest weight of the evidence supported the trial court's judgment because its calculation of paid principal was not ascertainable from the record. *Id*. at ¶ 45. We remanded the case to

4

the trial court to conduct a de novo review of the magistrate's decision and the vendees' objections and to take additional evidence, if necessary. *Id.* at ¶ 46.

{¶18} Following this court's remand, the trial court held a hearing. The parties' prior stipulations were read into the record. Mr. Sood and Mr. Rivers both testified and presented documents. After the hearing, both sides filed post-hearing briefs. The parties disputed two issues: (1) whether the vendees' January 3, 2022 payment should have been allocated in the same manner as all prior payments or solely toward principal; and (2) whether the late fees were properly imposed.

{¶19} The trial court filed a judgment entry stating, in relevant part:

{¶20} "Having reviewed the arguments of the parties, I find that it is inequitable to allow the Defendant to get credit for the entire amount of the January 3, 2022 payment. At best, since the Defendant did not pay the balloon payment as he was required to do, he is a tenant at sufferance, paying rent and nothing more. However, I find that the more equitable application is to treat the January 3, 2022 payment as the other payments with deductions for real estate taxes, homeowner's assessment, interest and late fees."

{¶21} The trial court concluded that the vendees did not pay 20% of principal and ordered that the land contract was forfeited and cancelled. Based on this finding, the trial court determined it did not need to address the late fees issue.

{¶22} The vendees appealed and raise the following three assignments of error:

{¶23} "[1.] The Trial Court erred as a matter of law when it determined that Rivers and Hileman had not paid 20% of the principal owed on the land contract and thus erred in ruling that Plaintiffs-Appellees were entitled to a forfeiture of said contract.

{¶24} "[2.] The Trial Court erred in determining the case on equitable principles.

5

Case No. 2023-T-0106

{¶25} "[3.]  In the event that this case should have been determined upon principles of equity, such principles favor Rivers and Hileman and not Plaintiffs-Appellees."

## Standard of Review

{¶26}  The parties disagree on the applicable standard of review.  The vendees contend that the trial court held a bench trial, which requires us to review the trial court's legal findings de novo.  The Soods contend this matter involves the trial court's adoption of a magistrate's decision, which we review for an abuse of discretion.

{¶27}  We agree with the vendees.  Following this court's remand, the trial court effectively held a bench trial and heard the matter anew, which the civil rules expressly permit.  *See* Civ.R. 53(D)(4)(b) ("A court may hear a previously-referred matter").  "[O]n appeal from a bench trial we review the trial court's factual findings under the manifest weight standard of review, while the trial court's legal findings are reviewed de novo." *Ultimate Salon & Spa, Inc. v. Legends Constr. Group*, 2019-Ohio-2506, ¶ 30 (11th Dist.).

## Forfeiture

{¶28}  In their first assignment of error, the vendees contend that the trial court erred as a matter of law in determining they had not paid at least 20% of principal; therefore, the vendees contend, the trial court erred in finding that the Soods were entitled to forfeiture and eviction.

{¶29}  R.C. Ch. 5313 governs land installment contracts.  A "land installment contract" is an "executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located

6

Case No. 2023-T-0106

in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation." R.C. 5313.01(A). If the vendee defaults under the contract and fails to cure within 30 days, the vendor may pursue one of two courses of action to regain possession of the property. R.C. 5313.05. If a vendee defaults on a land installment contract that has been in effect for less than five years, the vendor may bring an action for forfeiture of the vendee's rights in the contract and for restitution of the property. R.C. 5313.08. However, if the contract has been in effect for more than five years, or if the vendee has paid more than 20% of the purchase price, a vendor may only recover possession of the property by foreclosure and judicial sale. R.C. 5313.07.

{¶30} "R.C. 5313.07 is designed to give additional protection to the vendee of a land installment contract who has occupied the property for a substantial period of time, five years or more, or who has acquired substantial equity in the property, 20 percent or more of the purchase price." *Burdge v. Welsh*, 1983 WL 3367, *2 (10th Dist. Feb. 22, 1983). "Unless otherwise expressly stated by the contracting parties, the amounts paid by the vendee which are allocable to insurance premiums, real estate taxes, or interest on unpaid principal are not included in the calculation of whether the vendee has paid twenty percent or more of the purchase price under R.C. 5313.07." *Smith v. Blackburn*, 31 Ohio App.3d 251 (4th Dist. 1987), paragraph two of the syllabus. *See May v. Williams*, 1993 WL 76252, *1 (11th Dist. Feb. 28, 1993) (citing *Smith* with approval).

{¶31} The dispositive issue in this case is the proper allocation of the vendees' January 3, 2022 payment. Resolving that issue depends on the meaning of the language in the parties' land contract.

7

Case No. 2023-T-0106

{¶32} "When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 37. "'As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.'" *Id.*, quoting *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11.

{¶33} "[T]erms in a contract are ambiguous when they are susceptible to more than one reasonable interpretation." *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 12. "It is generally the role of the fact-finder to resolve any ambiguity in a contract." *Id.* "In other words, whether a contract is ambiguous is a question of law, but the resolution of an ambiguous term in a contract is a question of fact." *Id.*

{¶34} The vendees argue that the land contract is ambiguous because it does not specifically address how the Soods should have allocated the January 3, 2022 payment. Since the Soods' attorney drafted the land contract, they argue, the ambiguity should be construed against the Soods and in the vendees' favor. Therefore, the January 3, 2022 payment should have been allocated solely to principal. Since the sum of the vendees' payments would then exceed 20% of principal, the Soods were not entitled to forfeiture and eviction.

{¶35} Although creative, the vendees' argument is incorrect. The parties' land contract is not ambiguous. Contrary to the vendees' assertion, the land contract does not

8

"contemplate" that they would make 31 monthly payments prior to the final payment on January 3, 2022. The contract does not explicitly state the number of required monthly payments; however, the plain and ordinary meaning of the contract's express language supplies the answer. Specifically, the contract required the vendees to pay consecutive monthly installments on the first day of each month, beginning on June 1, 2019, with a five-day grace period. The remaining balance was due and payable on January 3, 2022. Pursuant to this provision, the vendees agreed to make monthly payments from June 1, 2019, through January 1, 2022, i.e., 32 monthly payments, prior to the final due date of January 3, 2022. Thus, the vendees' January 3, 2022 payment constituted the final monthly payment. Since the land contract expressly stated that monthly payments are allocated first to the real estate taxes and the homeowner's assessment and then to interest and principal, the Soods properly allocated the vendees' January 3, 2022 payment.

{¶36} While it may seem unusual that a contract would require separate payments only days apart, it is not an absurd result, especially in the context of a land contract. The parties have characterized the final payment as a "balloon" payment. A balloon payment is a "'final payment of principal . . . commonly representing essentially the entire principal.'" *Ceroni v. Suffield United Church of Christ*, 2003-Ohio-5707, ¶ 27 (11th Dist.), quoting *Black's Law Dictionary* (6th Ed. 1991). Courts have recognized that a balloon-payment provision contemplates that a vendee will obtain bank financing before the due date. *See Burdge*, 1983 WL 3367, at *1 (10th Dist.) ("The land contract provided that the note was due and payable in full on March 31, 1982, obviously contemplating refinancing then"). This concept is confirmed by the provision that permitted the vendees to make

9

Case No. 2023-T-0106

"any prepayment" without penalty as long as it was greater than $40,000. The vendees' contrary interpretation of the land contract, by contrast, would require additional language to achieve their desired outcome. "Principles of contract interpretation preclude us from rewriting a contract by adding language or terms that the parties omitted." *Walsh v. Walsh*, 2022-Ohio-3373, ¶ 51 (11th Dist.).

{¶37} Accordingly, the trial court properly determined that the vendees paid less than 20% of principal. The vendees' first assignment of error is without merit.

## Equity

{¶38} In their second assignment error, the vendees contend that the trial court erred in deciding the case based on equitable principles. We agree that the trial court erred; however, its error is not reversible.

{¶39} The Supreme Court of Ohio has held that "when a contract has an express provision governing a dispute, that provision will be applied; the court will not rewrite the contract to achieve a more equitable result." *Dugan & Meyers Constr. Co. v. Ohio Dept. of Adm. Servs.*, 2007-Ohio-1687, ¶ 39. The parties' land contract governed the allocation of the vendees' January 3, 2022 payment. Therefore, the trial court erred in deciding the matter based on equitable principles.

{¶40} The Supreme Court has also held that "where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof." *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284 (1944). Rather, "[i]t is the duty of the reviewing court to affirm the judgment if it can be supported on any theory, although a different theory from that of the trial court." *Newcomb v. Dredge*, 105 Ohio App. 417, 424 (2d Dist. 1957). "This is so

10

because reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Geneva v. Fende*, 2009-Ohio-6380, ¶ 33 (11th Dist.). "Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial." *State v. Payton*, 124 Ohio App.3d 552, 557 (12th Dist. 1997).

{¶41} The plain and ordinary meaning of the contract's express language required the Soods to allocate the vendees' January 3, 2022 payment in the manner that they did. Therefore, the trial court's judgment was correct for the wrong reason. Accordingly, the vendees' second assignment of error is without merit.

{¶42} In their third assignment of error, the vendees contend, alternatively, that equitable principles favor them rather than the Soods. Since equitable principles were not applicable, the vendees' argument is moot. Accordingly, the vendees' third assignment of error is also without merit.

{¶43} For the foregoing reasons, the judgment of the Warren Municipal Court is affirmed.


EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2023-T-0106